## Whitpain Township *v.* Bodine, Appellant.

Argued January 12, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and ARNOLD, JJ.

*Samuel H. High, Jr.,* with him *High, Swartz, Childs & Roberts,* for appellants.

*Federico F. Mauck,* with him *Wm. Perry Manning, Jr.,* and *Wright, Mauck, Hawes & Spencer,* for appellee.

OPINION BY MR. JUSTICE ARNOLD, February 13, 1953: This is an appeal from the decree of the court be-

low enjoining defendant's use of his land as a "piggery."

Under authority given by The Second Class Township Law of 1933, P. L. 103, as amended, 53 PS §19093-2001, et seq., plaintiff-township passed a zoning ordinance, effective June 7, 1950, providing that: "No piggeries. . . will be permitted within the residential districts of this township."

Defendant, a resident of New Jersey, owns approximately 67 acres of land in the township, which land the ordinance placed within the highest classification for residential purposes. He raised pigs on the land from the time of its purchase in 1923 until 1945, when he removed his pigs and rented the land to one Love. The defendant testified that Love raised some pigs, but how many or whether for commercial purposes was not shown. In 1948, the land was rented to one Cavanaugh, but there was nothing to show that he raised pigs, and the defendant himself testified: "I don't know if he [Cavanaugh] kept any over in the winter. I thought he kept some in the barn in the winter time." And, when asked again whether there were pigs on the land from 1948 until December of 1950, defendant answered: "I can't say." Cavanaugh left, and defendant retook possession in December, 1950.

Before defendant started operations he was advised in writing that they would be in violation of the ordinance, but he operated nevertheless.

There are on the land a farmhouse, which is rented as a dwelling; a garage-apartment in which the defendant's caretaker resides; a barn, cowshed, pigpens and runs. Livestock consists of some chickens and ducks, 2 steers and 2 horses. Some grains are raised on the lands, most of which, if not all, are used as feed for the pigs. This feed is supplemented by commercial protein feed, and fermented grain which is a waste or

refuse product of appellant's brewery in Camden, New Jersey. The number of pigs varied, but defendant stated that in previous years he had had as many as 600, and at time of trial had about 75 sows and 2 boars. They are kept in some twenty pens and two breeding lots, which are close to the residential area of the village of Blue Bell. He acknowledged that he bred the sows, kept the young until 8 weeks old, and then removed or sold them. Shortly before, he had sold some 100 pigs.

On this testimony the court determined that from "late 1948 through approximately December, 1950, there were no pigs kept on the premises;. . . the overwhelming and predominant purpose of the tract is for the raising of pigs. . . [which] are raised entirely for commercial purposes and not for consumption by the owner; the property is farmed for the pigs and the pigs are not raised as part of the farming"; that it was a piggery and a violation of the ordinance.

Defendant argues that it is a "farm" and not a "piggery"; that even if it is a piggery, it is permissible as a non-conforming use engaged in, on and prior to the effective date of the ordinance; and that since he is not proceeded against as for a nuisance, such use should not be enjoined.

" 'It is our duty, instead of defeating the purpose of an ordinance and vitiating it, to resolve any doubt in regard to its construction in favor of its validity.' ": *Lower Merion Township v. Gallup,* 158 Pa. Superior Ct. 572, 576, 46 A. 2d 35. There can be no question that zoning ordinances are valid and constitutional *"whenever they are necessary for the preservation of public health, safety, morals or general welfare, and not unjustly discriminatory, or arbitrary, or unreasonable, or confiscatory in their application to a particular or specific piece of property.":* *Lord Appeal,*

368 Pa. 121, 125, 81 A. 2d 533. ". . . zoning classifications are largely within the judgment of the legislative body and the exercise of that judgment will not be interfered with by the courts except in cases where it is obvious that the classification has no substantial relation to public health, safety, morals or general welfare": *Gratton v. Conte,* 364 Pa. 578, 584, 73 A. 2d 381. The power to establish residential districts is settled (*Jennings' Appeal,* 330 Pa. 154, 198 A. 621).

A "piggery" has been defined as a "place where swine are kept or bred;. . ." (Webster's Unabridged New International Dictionary, 2nd ed.) ; "a pig-breeding establishment" (The Oxford English Dictionary, Vol. VII., page 847). That defendant's operations constitute a "piggery" cannot be seriously questioned. The only use made of the lands, other than to raise pigs, is the incidental one of raising a part of the grains needed to feed them.

It is recognized that a non-conforming use engaged in at the time of passage of the ordinance will be protected (*Haller Baking Company's Appeal,* 295 Pa. 257, 145 A. 77; *Cheswick Borough v. Bechman,* 352 Pa. 79, 42 A. 2d 60) ; but no such use existed here. The testimony clearly shows an abandonment of the piggery from 1948 to some six months after the effective date of the ordinance, and it is not too certain that pigs were raised on the land after 1945, when defendant moved his pigs and proceeded to rent the lands to others. "There are two primary factors in an existing use for business purposes, '(a) construction or adaptability of a building or room for the purpose, *and* (b) employment of the building or room or land within the purpose'. . . It is not the present intention to put property to a future use but the present use of the property which must be the criterion": *Cheswick Borough v. Bechman,* 352 Pa. 79, 82, 83, 42 A. 2d 60. (Italics

supplied). In the instant case, even though there may have been an intention again to use the land for that purpose, there had been an abandonment or cessation of such use. Defendant was, on the effective date of the ordinance, in the same position as he would have been if he had just purchased the premises,—he had no non-conforming use. The mere fact of adaptability of some of the "buildings," the importance of which can be seriously questioned, does not avail him anything. It might be added that the equities do not favor him since he commenced his operation after being advised of the ordinance, and that his intended use of the lands would be sought to be enjoined. Cf. *Phillips v. Griffiths,* 366 Pa. 468, 470, 77 A. 2d 375. The findings of the court below are amply supported by the testimony of the defendant alone, and will not be questioned here.

Decree affirmed at appellant's costs.