## Phi Lambda Theta Zoning Case.

Argued April 22, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Clyde P. Bailey,* with him *John L. Bailey,* and *Irvin Graybill, Jr.,* for appellant.

*Charles Wolfe Kalp,* for appellees.

OPINION BY MR. JUSTICE BOK, June 3, 1960:

Bucknell University, 114 years old and educating 2500 students yearly, is located in the Borough of Lewisburg, Union County.

It has eight men's college fraternities which own property in the borough, and one of these, Phi Lambda Theta, occupied a small and inadequate house at 34 Brown Street. In June, 1958, this fraternity agreed to buy a new and more commodious house at 203 South

Third Street, also in the borough. This agreement was later consummated. The fraternity then applied for a certificate of occupancy, which was refused by the administrative officer of the zoning ordinance. On appeal, the board of adjustment, by a divided vote, reversed the officer and granted the certificate. The protesting neighbors appealed to the court of common pleas, which reversed the board and revoked the certificate. By stipulation, a tape recording of the testimony taken before the board constitutes the record of evidence, with no further testimony taken by the court below. The fraternity now appeals to us.

We think that appellant is entitled to a certificate of occupancy as a matter of right.

Under Article III—Use Regulations—of the ordinance, Section 1 deals with permitted uses in a Residential District, saying that "no building or structure shall be used, erected . . . for any industrial, manufacturing, or commercial purpose, or for any other than the following: A. Single detached dwellings, twin or semi-detached dwellings, apartment houses or multiple dwellings. . . . H. Club, fraternity house, or lodge when authorized as a special exception."

Both parties wanted to agree that sub-section H is unconstitutional, at least so far as the requirement of authorization as a special exception is concerned, but we need not reach that question. It is also admitted that no signs, guideposts, or standards are given in the ordinance by which to judge the conditions under which a "special exception" might be granted or withheld. This lack prevents an exception from being validly made: *Devereux Foundation, Inc., Zoning Case,* 351 Pa. 478 (1945), 41 A. 2d 744; *Dooling's Windy Hill v. Springfield Township Zoning Board,* 371 Pa. 290 (1952), 89 A. 2d 505; *Archbishop O'Hara's Appeal,* 389 Pa. 35 (1957), 131 A. 2d 587.

Since the ordinance does not contain even the requirement of the need to promote the health, safety, morals, and general welfare of the borough, such as we held would sustain the grant of a special exception in the *Archbishop O'Hara* case, we need not consider this phase of the case further.

Neither need we consider it as equating an application for a variance, under the rule of *Root v. Erie Zoning Board*, 180 Pa. Superior Ct. 38 (1955), 118 A. 2d 297, that exact terminology is not required in zoning cases and that the courts will treat the case for what it is, regardless of what the parties call their respective positions. This rule still does not excuse the need of the applicant to show evidence of unnecessary hardship and of consonance with the public interest of the variance requested. An applicant must carry this burden: *Fagan v. Zoning Board*, 389 Pa. 99 (1957), 132 A. 2d 279.

In the instant case there is no such evidence introduced by anyone. In fact, counsel for the fraternity said this: ". . . we are certainly not going to offer [testimony] under any theory of a variance. We are here for an exception and that's all we want, we don't want a variance. . . ."

Hence we are concerned neither with a special exception nor with a variance.

We think that the Fraternity may exist as a multiple dwelling under sub-section A, and as a fraternity house, without the need of a special exception, under sub-section H.

Under A, it is obvious that an apartment house is considered different from a multiple dwelling, and so are single, twin, or semi-detached dwellings. This fraternity house, where twenty-four boys sleep in bedrooms and eat in a common dining-room, resembles a multiple dwelling more than any of the other types mentioned.

And in *Jennings' Appeal,* 330 Pa. 154 (1938), 198 A. 621, a Pittsburgh ordinance included fraternity houses within the class of multiple dwelling: the idea, therefore, is not impossible or preposterous. Since a fraternity house must be something, we are satisfied that it be considered a multiple dwelling within the scope of the ordinance before us. This is borne out by the definitions in the ordinance. These were omitted from the record but appear in the briefs of both parties. Thus: "Dwelling—Any building which is designed for or occupied in whole or in part as the home, residence, or sleeping place of one or more persons either permanently or transiently. . . . Dwelling—Multiple—A dwelling designed for or occupied otherwise than a single family dwelling, two family dwelling or double house."

At the same time "fraternity house" is expressly listed in sub-section H. Appellees contend that all three classes there mentioned—clubs, fraternity houses, and lodges—are subject to the requirement of a special exception. We do not read the language so. Zoning ordinances are presumably valid and constitutional: *Whitpain Township v. Bodine,* 372 Pa. 509 (1953), 94 A. 2d 737. But they also impose restrictions on the free use of property and are in derogation of the common law. Hence they must be construed strictly: *Lord Appeal,* 368 Pa. 121 (1951), 81 A. 2d 533.

It may well be that the framers of this ordinance meant to include fraternity houses in either A or H but not both, or to deny them existence altogether except under special exception. We have no guide to their intent save in the language they used, subject to the rule of strict construction. It becomes apparent, thus construed, that H requires a special exception for lodges only and not for clubs or fraternity houses. Had there been a comma after "lodge", the argument that all

three should be bound by the need for a special exception would have weight, but as written H means: "Club. Fraternity house. Lodge, when authorized as a special exception."

That a fraternity house may therefore qualify under A or H or both is of no concern to us save as an exercise in the construction of language. The authorities must have known their town and the problems attendant on college life, and it is not our province to supply their intent. Nor may we say that they may not have seen a reason to distinguish between lodges, on the one hand, and clubs and fraternity houses, on the other.

The order of the court below is reversed and the record is remanded with instructions to issue to appellant a certificate of occupancy.