Michael Iwinski, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania State Horse Racing Commission, Respondent.

Argued June 6, 1984, before Judges WILLIAMS, JR., BARRY and BLATT, sitting as a panel of three.

*William F. Fox, Jr., Fox, Differ, Callahan, Ulrich & O'Hara,* for petitioner.

*Gerald T. Osburn,* Assistant Chief Counsel, with him, *John B. Hannum, Jr.,* for respondent.

*Samuel E. Dennis,* with him, *Stewart L. Cohen, Meltzer & Schiffrin,* for intervenor, Eagle Downs Racing Association.

OPINION BY JUDGE WILLIAMS, JR., September 11, 1984:

Michael Iwinski, an assistant horse trainer, has appealed from an order of the Pennsylvania State Horse Racing Commission (Commission) affirming his exclusion, by Eagle Downs Racing Association (Eagle Downs), from the stable area at Keystone Race Track.

On January 19, 1983, the Commission granted Mr. Iwinski a license to work at race tracks in Pennsylvania. The agency described the license as being "temporary in nature."[1] Soon after receiving his license, Iwinski applied to the officials at Keystone Race Track for permission to work there. By a written notice dated January 26, 1983, Eagle Downs, co-owner of Keystone, advised him that he was denied admission to the stable area at the track.[2] One of the reasons for the decision, according to the notice, was the fact that in 1980 Iwinski had been put on criminal probation in the State of Michigan for the offense of marijuana delivery. Another reason stated in the notice was that, when Iwinski applied for permission to work at Keystone, he admitted to the track's security officer that he had actually *sold* marijuana in connection with the 1980 drug offense.

---

[1] The Commission staff had initially denied him a license. But, following an agency hearing, he was granted the license.

[2] The technical name of the notice is "Notice of Ejection and/or Denial of Admission."

As was further set forth in the notice from Eagle Downs, Keystone Race Track had a policy which, in part here pertinent, provided as follows: if a person has been convicted of selling or distributing a controlled dangerous substance, including marijuana, or has *admitted such conduct*, he will not be allowed to work at Keystone for a period of seven years after the conviction or admission.

Eagle Downs' action was appealed by Iwinski to the Commission. When the Commission affirmed following a hearing, he took a further appeal to this Court.

The appellant points to the undisputed fact that, when he was granted his license on January 19, 1983, the Commission had before it and had taken into account a statement of his criminal history— including the 1980 conviction in Michigan for marijuana delivery.[3] Asserting that his exclusion by Eagle Downs was for conduct which the Commission itself had considered in adjudging him fit for a license, the appellant argues that the Commission's later order affirming the action of Eagle Downs violated the doctrines of res judicata and collateral estoppel. We must note, perhaps appropriately at this point, that in the adjudication by which the Commission granted Iwinski a license, the agency found that he had "never been charged with a *sale* of marijuana, *only with possession and delivery.*" (Emphasis added.)

The licensing of persons to participate in horse race meetings is governed by Section 213 of the Race Horse Industry Reform Act (Act).[4] Section 213(c) of the Act[5] empowers the Commission to license a person if

---

[3] Iwinski's criminal record also included a conviction for larceny, and one for attempted larceny.

[4] Act of December 17, 1981, P.L. 435, *as amended*, 4 P.S. §325.213.

[5] 4 P. S. §325.213(c).

it finds that "the experience, character and general fitness of the applicant" are such that his participation in meets is "consistent with the public interest, convenience and necessity, and with *the best interests of racing."* (Emphasis added.) In addition to the foregoing general standards, another provision of the Act, Section 213(d),[6] authorizes the Commission to refuse to issue a license if it finds that the applicant has been convicted of any of certain offenses, or has perpetrated certain others. It seems that Iwinski's criminal record, even with the 1980 marijuana conviction, was not deemed by the Commission to include any of the offenses which would have warranted refusing him a license under Section 213(d).

One of the crucial elements of this case arises from the terms of Section 215(c) of the Act,[7] upon which Eagle Downs relied for its right to exclude the appellant. Of significance in this regard is the part of Section 215(c) which states that:

A licensed corporation may refuse admission to and eject from the enclosure of the race track operated by the corporation, any person *licensed by the [Commission] under section 213,* employed at his occupation at the race track, whose presence there is deemed *detrimental to the best interests of horse racing,* citing the reasons for that determination. (Emphasis added.)

As is obvious from the above statutory provision, the legal right of Eagle Downs to exclude a *licensed* person from its track depends upon a reasoned determination that his presence there is *"detrimental to the best interests of horse racing."*

The appellant observes that the standard for exclusion under Section 215(c) is, but for an insignificant

---

[6] 4 P.S. §325.213(d).

[7] 4 P.S. §325.215(c).

difference in its phrasing, essentially identical to one of the factors the Commission itself must consider in the process of granting a license under Section 213. That is, by force of Section 213(c) of the Act, the Commission may not license a person unless it finds that the applicant's participation in horse race meets is *"consistent with the best interests of racing."* In his reliance on the doctrines of res judicata and collateral estoppel, the specific nature of the appellant's argument begins as follows: that since the Commission had considered his 1980 marijuana conviction when it granted him a license, the agency's decision in that respect was a binding determination that, even with the conviction, he satisfied the standards for licensing under Section 213 of the Act—including the requirement that his participation be *"consistent with the best interests of racing."* Based on this assertion, he further argues that Eagle Downs could not use the 1980 conviction to conclude that his presence at its track was *"detrimental to the best interests of horse racing."* According to the appellant, such a determination by Eagle Downs had to rest on a factor that was *not* considered by the Commission in licensing him.

For a prior judgment to have the effect of res judicata on a subsequent suit or proceeding, there must be a concurrence of four conditions: (1) identity of issues; (2) identity of causes of action; (3) identity of persons and parties to the action; and (4) identity of the quality or capacity of the parties suing or sued. *Safeguard Mutual Insurance Co. v. Williams,* 463 Pa. 567, 345 A.2d 664 (1975); *Schubach v. Silver,* 461 Pa. 336, 336 A.2d 328 (1975). In the matter before us, the doctrine of res judicata could not apply. We need not address all of the defects in the appellant's reliance on that plea, but at least one of them is obvious: there was no identity of parties in the two proceedings be-

fore the Commission. In the proceeding that resulted in Iwinski being granted a license, the only parties were he and the Commission itself. Eagle Downs was not a party in that proceeding; and there is no basis for concluding that a relationship of privity existed between the Commission and Eagle Downs. Hence, in the subsequent proceeding concerning Iwinski's exclusion from Keystone Race Track, Eagle Downs could not be affected by a plea of res judicata.[8]

The appellant can fare no better with the doctrine of collaterial estoppel. A plea of collateral estoppel is valid if: (1) the issue decided in the prior adjudication was identical with the one presented in the later proceeding; (2) there was a final judgment on the merits; (2) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom it is asserted had a full and fair opportunity to litigate the issue in question in the prior proceeding. *Safeguard Mutual Insurance Co.* One of those elements, at the least, is missing in the case at bar. Iwinski's sole party-adversary in the proceeding concerning his exclusion from the race track was Eagle Downs. As we have already stated, Eagle Downs was not a party nor in privity with a party to the antecedent licensing adjudication. That factor alone would preclude Iwinski from asserting a plea of collateral estoppel against Eagle Downs.

One other ingredient of this case deserves mention. Eagle Downs, in exercising the power of exclusion conferred by Section 215(c) of the Act, did not base its decision solely on the appellant's 1980 conviction for marijuana *delivery*. The exclusion was also grounded

---

[8] The Commission's role in the exclusion proceeding was strictly adjudicative; it was not a party as it had been in the licensing decision.

on his admission to security personnel at Keystone that he had actually *sold* marijuana in connection with the 1980 offense. The Commission apparently did not have the latter information when it licensed him.[9] For the reasons set forth in this opinion, the Commission order here for review must be affirmed.

ORDER

AND Now, the 11th day of September, 1984, the order of the Pennsylvania State Horse Racing Commission dated May 20, 1983, at Docket No. 83-009K, is hereby affirmed.

---

[9] We should point out that the appellant does not challenge the substantive validity of the Keystone "house-rules" cited by Eagle Downs in excluding him from the race track. His sole argument is based on the doctrines of res judicata and collateral estoppel.