568 A.2d 1372

**Silsby H. KNIGHT and Ivy Knight, Appellants,**

**v.**

**LYNN TOWNSHIP ZONING HEARING BOARD and F. Paul Laubner, Appellees.**

Commonwealth Court of Pennsylvania.

Argued Nov. 13, 1989.

Decided Jan. 24, 1990.

618

Kevin T. Fogerty, Traub, Butz & Fogerty, P.C., Allentown, for appellants.

No appearance for appellee.

William G. Malkames, Allentown, for intervenor, F. Paul Laubner.

Before CRAIG and BARRY, JJ., and BARBIERI, Senior Judge.

CRAIG, Judge.

Silsby H. and Ivy Knight appeal a decision of the Court of Common Pleas of Lehigh County that denied the Knight's appeal from a decision of the Zoning Hearing Board of Lynn Township. The issue in this case is whether Lynn Township Ordinance No. 1986–6, which changed the zoning of a 10.067 acre parcel of land of intervenor F. Paul Laubner in an Agricultural district to Rural Center, constitutes illegal spot zoning.

The Knights own and live on land zoned Agricultural that abuts Laubner's property. Laubner's property had been zoned Rural Residential (as distinguished from Rural *Center*) in 1977 when he and members of his family acquired it; in 1982 the township adopted the present Lynn Township Zoning Ordinance, which redesignated the area in which Laubner's tract is located as an Agricultural district. Laubner became sole owner of the property sometime between 1985 and 1987.

In response to Laubner's application for rezoning, the Lynn Township Supervisors have now rezoned Laubner's

property to Rural Center, a more dense, village residential classification which allows a dwelling for each 8,000 square feet of lot area. The Lynn Township Zoning Hearing Board, after hearings, rejected the Knights' objections, concluding that the rezoning did not constitute spot zoning. The trial court affirmed the decision of the Zoning Hearing Board.

Because the trial court took no additional evidence, this court must look to the board's findings of fact. The relevant findings of the board are as follows:

11. On February 5, 1981, the Township adopted a Supplemental Comprehensive Plan which divided the Township into six zoned areas.

12. The area around the Village then being serviced by central sewerage was proposed to be zoned "Rural Center", and the land south of the Village, including the Laubner Tract and the developments known as Lynn Valley Farms and Scenic Heights and adjacent areas were proposed as "Rural Residential". Both such districts would permit the construction of single family dwellings.

13. On June 3, 1982, the Township adopted a new zoning ordinance (the "1982 Ordinance") in which the area serviced by central sewerage in and about the Village and the nearby Northwestern School Complex were zoned "Rural Center", which permitted, where sewerage was available, single family detached dwellings, and also permitted townhouses and apartments. Single family detached dwellings carry an 8000 sq. ft. minimum lot size with connection to the Sewer System, 1 acre without.

14. The area in and about the residential developments known as Lynn Valley Farms and Scenic Heights, south of the Village, was zoned "Rural Residential", which permitted single family detached dwellings on a minimum lot area of one acre without central water and sewer. The land area between the Rural Center of New Tripoli and the Rural Residential of the Lynn Valley Farms area, including the Laubner Tract, was rezoned "Agricultural",

which under the 1982 Ordinance.... would permit only two dwellings on the 10 acre Laubner Tract.

15. The declared purpose of the 1982 Ordinance is to promote the public health, safety, morals and general welfare of the Township, its residents and its land owners, and among its specific objectives is:

(a) To promote in the public interest the utilization of land for the purposes for which it is most appropriate;

(b) To guide and direct the orderly [development] of the use of land in Lynn township in accordance with the Lynn Township Comprehensive Plan of 1968 as revised by the 1981 Comprehensive Plan Supplement....

16. Among the purposes of the Plan and its 1981 [Supplement] are to provide development opportunities in areas adjacent to those where utilities services exist and to promote the arrangement of the adjacent land uses for maximum compatibility.

20. On April 3, 1986, Laubner appeared before the Supervisors at their regular meeting and requested the approval of the rezoning of this Tract from "Agricultural" to "Rural Center", and submitted a sketch plan with site data indicating a subdivision of 16 lots for single family dwellings with minimum lot size of 8,000 square feet. The Supervisors passed a resolution that action be taken to rezone the Tract from "Agricultural" to "Rural Center", subject to the conditions that: not more than 16 single family dwellings be constructed using municipal sewer and on site water; a restrictive covenant running with the land be recorded to provide that only single family dwellings and that all dwellings cost not less than $80,000; Laubner enter into an Agreement with the Authority for the construction and extension of the sanitary sewer trunkline to the Tract.

21. On April 12th, 1986, Laubner filed a Petition with the Supervisors to amend the zoning ordinance to rezone his Tract from "Agricultural" to "Rural Center."

22. On August 7, 1986, *the Supervisors entered into a written agreement with Laubner,* as the owner of the

Tract, providing that upon enactment of the ordinance: Laubner would cause to be recorded in the Office of the Recorder of Deeds a covenant running with the land *restricting construction to single family homes with a value of not less than $70,000; limit the number of lots to be developed to 25, with required setbacks and a minimum lot area of not less than 12,000 square feet;* that an agreement be entered into by Laubner with the Authority for the construction of an extension of the sanitary sewer trunkline to the Tract.

24. On September 4, 1986, pursuant to the Municipalities Planning Code and the Lynn Township Zoning Ordinance of 1982, Ordinance Number 1986–6 was enacted, rezoning the Laubner Tract from "Agricultural" to "Rural Center".

28. The Laubner Tract contains 10 acres of unimproved land, is located on the southerly side of Schochary Road (Legislative Route 39070) leading from New Tripoli to Lynnville and is bounded on the north by the "Rural Center" (New Tripoli Village) district.

29. Although the Tract has been leased by Laubner to a farmer for corn and other crops since acquired by him in 1977, because of its size, topography and relatively poor soil, is not good farmland and is difficult to farm by conventional methods.

30. The surrounding properties are used for residential purposes, with parts of some larger tracts for farming.

31. To the north approximately 500 feet from the Tract is the Village of New Tripoli, a community of residential housing with some commercial establishments such as a bank, two hotels and a post office.

32. Immediately to the south, approximately 1,000 feet away, are two large residentially developed areas for single family dwellings known as Lynn Valley Farms and Scenic Heights.

38. A major factor in the Township Supervisor's decision to rezone the Laubner Tract was a desire to create

additional users of the Sewer System and thereby increase revenues of that System.

(Emphasis added.)

The Attachment, appended to this opinion, shows, by cross-hatching, Laubner's property as a peninsula zoned Rural Center jutting from the existing Rural Center zone into the Agricultural zone.

Spot zoning is a form of discriminatory zoning which has been defined as "[a] singling out of one lot or a small area for different treatment from that accorded to similar surrounding land indistinguishable from it in character, for the economic benefit of the owner of that lot or to his economic detriment. . . ." *Mulac Appeal*, 418 Pa. 207, 210, 210 A.2d 275, 277 (1965).

■ In *Mulac*, the Supreme Court indicated that there is no precise standard by which to determine whether a classification of property constitutes spot zoning. However, the court stated that the size of the property is one factor to consider in addition to unjustifiable differential treatment accorded the property. 418 Pa. at 210, 210 A.2d at 277. The topography, location, and characteristics of the tract are also among the factors to consider. *Porter Appeal*, 28 Pa. Commonwealth Ct. 415, 419, 368 A.2d 828, 830 (1977).

In *Pace Resources v. Shrewsbury Township Planning Commission*, 89 Pa. Commonwealth Ct. 468, 492 A.2d 818 (1985), we recognized that spot zoning is more than just discriminatory zoning. Judge Colins cited *Schubach v. Silver*, 461 Pa. 366, 336 A.2d 328 (1975), in which the Supreme Court noted that, in reviewing cases of alleged spot zoning, courts should consider the effect of the rezoning on public health, safety, morals and general welfare, and the relationship of the rezoning to the comprehensive plan.

Also of significance is this court's decision in *Township of Plymouth v. County of Montgomery*, 109 Pa. Commonwealth Ct. 200, 531 A.2d 49 (1987), *petition for allowance*

*of appeal denied,* 520 Pa. 622, 554 A.2d 513 (1988), in which we stated:

> The key point is that when a municipal governing body puts on blinders and confines its vision to just one isolated place or problem within the community, disregarding a community-wide perspective, that body is not engaged in lawful zoning, which necessarily requires that the picture of the whole community be kept in mind while dividing it into compatibly related zones by ordinance enactments. In other words, legislation as to a *spot* is the antithesis of *zoning,* which necessarily functions within a community-wide framework.... [Z]oning, to be valid, must be in accordance with a rational and well considered approach to promoting safety, health and morals and a coordinated development of the whole municipality. The classic statement of the same principle is in Haar, *In Accordance with a Comprehensive Plan,* 68 Harv.L.Rev. 155 (1955), in which Professor Haar pointed out that the essence of sound zoning—as distinguished from spot zoning—is zoning enacted on a comprehensive and well considered basis.

109 Pa. Commonwealth Ct. at 217–8, 531 A.2d at 57.

■ The pivotal issue in this case is whether land that is rezoned for more intensive residential development, in the configuration of a peninsula of the Rural Center zone extending into an Agricultural zone (as shown on the Attachment hereto), based on regulations and conditions devised by contract, constitutes spot zoning.

In *Montgomery Township Appeal,* 51 Pa. Commonwealth Ct. 627, 415 A.2d 134 (1980), this court concluded that the creation of an island or peninsula of residential land within an area of commercial uses constituted spot zoning. That decision involved spot zoning which resulted in a special economic detriment to the landowner. Even if the rezoning in this case would not result in an economic detriment to Laubner, that distinction does not mitigate the other factors involved that suggest spot zoning has occurred. Although an amendment which creates a peninsula

does not necessarily constitute spot zoning if it satisfies the criteria set forth above, we conclude that the action here did constitute spot zoning.

The original zoning of Laubner's property was Rural Residential, a zoning classification which requires single-family dwellings to have lot sizes of at least one acre each. Until now, Laubner's property has never been classified as Rural Center, which permits lot sizes of 8,000 square feet, the lot size Laubner originally proposed for his subdivision plan. Contrary to Laubner's argument, the rezoning does not comport with the comprehensive plan or the 1981 Plan Supplement because, even when the tract was in a Rural Residential district, that classification did not permit development of the same intensity as in a Rural Center district.

However, a conclusive factor in this case is the contract between Laubner and the township supervisors. The terms of that agreement lend support to the conclusion that the rezoning does constitute spot zoning.

As summarized in the zoning hearing board's Finding of Fact No. 22, Laubner agreed to record a covenant running with the land in the Recorder of Deed's Office that would limit Laubner's development of the tract to 25 dwellings, each of a value not less than $70,000. In addition, the contract limits the development density to not less than 12,000 square feet per dwelling. In effect, this special agreement thus seeks to establish, for Laubner's property, a density standard which departs from the official Rural Center 8,000 square feet standard, as well as from the Rural Residential one-acre-per-family standard.

Thus, the contract, which the governing body tailored to ensure particular use restrictions of the tract, is evidence of the Supervisors' intent to adopt a unique classification for a particular parcel.

In *Carlino v. Whitpain Investors*, 499 Pa. 498, 453 A.2d 1385 (1982), the Pennsylvania Supreme Court held that use restrictions to which a property owner agrees in exchange for rezoning are unenforceable. Specifically, the court stat-

ed that the Commonwealth has long recognized the proposition that "individuals cannot, by contract, abridge police powers which protect the general welfare and public interest." 499 Pa. at 504, 453 A.2d at 1388.

The court relied, in part, on a decision of the New Jersey Supreme Court that held that covenants and restrictions to which a landowner agrees as a means of effecting a zoning change were invalid on the ground that the purported contract, with regard to the municipality, was ultra vires and contrary to public policy. *Id.*

The contract in this case points up the fact that the rezoning is not consistent with the community-wide plan, and that the governing body, in adopting the rezoning, sought to vary it by contract to fit Laubner's proposal, rather than to further the purpose of the zoning ordinance or the comprehensive plan.

Having concluded that the adoption of Ordinance No. 1986-6 constituted spot zoning, we reverse the decision of the trial court.

## ORDER

Now, January 24, 1990, the order of the Court of Common Pleas of Lehigh County at No. 88-C-624, dated April 28, 1989, is reversed.

APPENDIX

LEGEND

Laubner land
rezoned RC

(RR 205a)