# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Raisa and Yevgeniy Burd, Raju : 
and Kalpana Gurung, and : 
Henry Pietkiewicz, : 
                       Appellants : 
                       : 
            v. :   No. 1049 C.D. 2021
                       :   Submitted: June 10, 2022
Borough of Brentwood Zoning : 
Hearing Board, Borough of : 
Brentwood and Agile : 
Development, LLC : 

BEFORE:    **HONORABLE RENÉE COHN JUBELIRER,** President Judge
                    **HONORABLE CHRISTINE FIZZANO CANNON,** Judge
                    **HONORABLE MARY HANNAH LEAVITT,** Senior Judge

<u>**OPINION NOT REPORTED**</u>

**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**     **FILED: April 18, 2023**

Raisa and Yevgeniy Burd, Raju and Kalpana Gurung, and Henry Pietkiewicz (collectively, Appellants or Residents) appeal from the August 26, 2021 Opinion and Order issued by the Court of Common Pleas of Allegheny County (common pleas), dismissing their appeal from the denial of their substantive validity challenge to the Borough of Brentwood (Borough) Zoning Ordinance No. 2020-1286 (Ordinance), BOROUGH OF BRENTWOOD, PA., ZONING ORDINANCE NO. 2020-1286 (2020), by the Borough Zoning Hearing Board (ZHB). The ZHB held that the Ordinance did not constitute illegal spot zoning. Having reviewed the record and the law, we conclude the ZHB did not abuse its discretion

or commit an error of law in rejecting Appellants' substantive validity challenge because substantial evidence supports the ZHB's findings. Therefore, we affirm.

## I. BACKGROUND

On November 23, 2020, the Borough enacted the Ordinance rezoning 201 Wainwright Avenue (Property), which is owned by Agile Development, LLC (Agile), from R-1 (residential) to MUN (mixed-used neighborhood). On December 21, 2020, Appellants, who reside on residential properties located adjacent to or near the Property, filed a Notice of Substantive Validity Challenge to the Ordinance (Challenge). On February 10, 2021, and March 10, 2021, the ZHB held hearings at which Appellants and Agile offered evidence in support of their respective positions on the Ordinance's validity. Following the hearing, the ZHB issued a decision denying Appellants' Challenge, concluding that the rezoning of the Property was not spot zoning, and making the following relevant findings of fact.

5. The rezoned [P]roperty is identified as Lot and Block No. 247-A-154 and is 6,225 square feet in size. A single-family residence occupies the lot.

6. Agile purchased the house and lot at 201 Wainwright Avenue[, the Property,] on July 27, 2018[,] to provide six additional parking spaces for its business activities.

7. The rezoned [P]roperty is bordered on two sides by property that is zoned R-1, low density residential. The remaining boundaries are the MUN district, and the Wainwright Avenue right-of-way.

8. Agile's expert, Andrew J.G. Schwartz [(Schwartz)], of Environmental Planning & Design, testified he analyzed the boundary lines of [the Property] and concluded that about 50[%] relate to the R-1 zoning district and 50[%] relate to the MUN zoning district.

2

9. There are residential dwellings to the southwest and southeast of the rezoned property. The land to the northwest and northeast consists of both MUN and Commercial Redevelopment District (CRD) zoning districts that extend along Brownsville Road.

10. The homes in the area are of pre-World War II construction and many are within walking distance to the bus stop and stores on Brownsville Road, including Giant Eagle.

11. Agile . . . is owned by John Slater Jr., who also is president and supervisor of the John F. Slater Funeral Home, located at 4201 Brownsville Road.

12. Agile . . . owns the property at 4201 Brownsville Road, and the funeral home leases that property from Agile.

13. Agile is also the owner of Whitehall House, a hospitality venue for the funeral home that also [is] available for rent by the public for social events. Whitehall House is situated to the rear of the funeral home.

14. In 2001[,] Agile purchased two houses on Wainwright [Avenue], next to the rezoned [P]roperty at issue in the validity [C]hallenge. In 2013[,] Agile purchased a third house, at 110 Burdine Avenue.

15. [The Borough's] [C]omprehensive [P]lan was drafted and adopted in 1998 but has not been updated since.

16. In 2013, the [B]orough updated its zoning map to provide for the [MUN] zoning district, a new classification. There are three MUN [D]istricts in the [B]orough.

17. Section 210-10 of the Borough of Brentwood Zoning Code states that the purpose of the [MUN d]istrict is[]

> to provide areas for a mix of residential and neighborhood commercial facilities intended to serve the immediate area with goods and services. The [MUN] is intended to provide convenience opportunities intended to cater to the surrounding neighborhoods and community but is not intended to house facilities which are high impact, and which may be more regional in their draw.

3

18. The MUN district is intended to be a transitional district between the residential areas and more intense commercial areas. . . .

19. On February 2, 2015, the [B]orough rezoned the two Wainwright [Avenue] parcels and the Burdine property from R-1 to MUN at the request of Agile for the construction of Whitehall House and to provide sufficient parking for the venue and funeral home.

20. No validity challenge was raised against the 2015 rezoning of these three lots.

21. Issues arose after Agile began construction on the Whitehall House project behind the funeral home. Residents testified that the construction caused flooding and damage to their yards and the problem had not been corrected by Agile.

22. A resident did acknowledge that there was a sump pump in her basement before construction on Whitehall House and the parking lot began.

23. Residents offered no expert testimony as to the source or cause of the stormwater and flooding issues.

24. Residents further testified that the Whitehall House was not a "chapel" as had been originally proposed and subsequently approved. Residents claim it is a social hall available for rent for any purpose and open until late in the evening.

25. Residents argued that rezoning of the [Property] for parking constitutes illegal spot zoning because it creates a peninsula that juts into a R-1 area for six parking spaces they deem unnecessary.

26. Residents also testified that Agile had no need for additional parking because the parking on site was sufficient for the funeral home and Whitehall House.

27. [Mr.] Slater testified that at least four times a month the on-site parking is not adequate for the funeral home, and that when there are multi-family funerals visitors have to park on Burdine and Wainwright, as well as in lots of neighboring businesses after closing hours.

4

(ZHB's Decision, Findings of Fact (FOF) ¶¶ 5-27.[1])

The ZHB observed that ordinances are presumed to be valid and that the party challenging the validity of an ordinance bears a heavy burden to rebut that presumption by showing that the provisions are clearly unreasonable and arbitrary and bear no relation to public health, safety, morals, and general welfare. (*Id.*, Conclusions of Law (COL) ¶¶ 29-30.) In a spot zoning challenge, the ZHB held that the challengers had to prove that the rezoned land is being treated unjustifiably different from similar surrounding land. (*Id.* ¶ 31.) Based on its findings and the law, the ZHB concluded:

32. The rezoned [Property] in the instant case is not being treated differently[.] To the contrary, the [Property] is an extension of the existing MUN [D]istrict, and both the R-1 and MUN [D]istricts provide for residential uses.

33. The rezoned [Property] in the instant case is in an area characterized by a mixture of residential and non-residential land use; residents in the area of the rezoned [Property] are within walking distance of the bus stop and a variety of commercial and professional establishments on Banksville Road.

34. Although the comprehensive plan has not been updated it has not expired. This is not a basis for finding that the [O]rdinance is invalid.

35. That A[]gile and[/]or Mr. Slater may benefit from the rezoning of the subject [P]roperty is not a basis for finding the [O]rdinance invalid as it is presumed that parties seeking the rezoning of their property are doing it for their own benefit.

(*Id.* ¶¶ 32-35.) The ZHB voted three-to-two to deny the Challenge.

---

[1] The ZHB's Decision is attached to Appellants' brief as Exhibit B.

5

Appellants appealed the ZHB's Decision to common pleas, where no additional evidence was taken. Common pleas affirmed the ZHB's Decision, concluding that "the [ZHB] properly determined that extending the [Property] into the MUN district was not spot zoning." (Common Pleas Opinion (Op.) at 4-5.[2]) Common pleas held that "Appellants failed to rebut the presumption that the passing of the Ordinance is valid[,]" "that the rezoning of [the Property] is a natural extension of an existing MUN district which includes many districts that are entirely compatible with a residential district[,]" and that while "Appellants may be negatively impacted by this development, . . . a substantive validity challenge" is not the proper avenue by which to pursue a remedy. (*Id.* at 4.) Appellants now appeal to this Court.[3]

## II. APPEAL TO THIS COURT

On appeal, Appellants assert multiple reasons for why they contend the ZHB erred in rejecting the Challenge.[4]

    *A. Did the ZHB err by ignoring the Comprehensive Plan with which the Ordinance was allegedly inconsistent?*

Appellants assert that the ZHB erred in ignoring the Comprehensive Plan and that the Borough granted "serial rezoning requests," without regard to the

---

[2] Common pleas' opinion is attached to Appellants' brief as Exhibit A.

[3] "Because the parties presented no additional evidence after the ZHB's decision, our review is limited to determining whether the ZHB committed an abuse of discretion or an error of law." *Plaxton v. Lycoming Cnty. Zoning Hearing Bd.*, 986 A.2d 199, 204 n.2 (Pa. Cmwlth. 2009) (citation omitted). "A conclusion that the [ZHB] abused its discretion may be reached only if its findings are not supported by substantial evidence." *Baker v. Chartiers Twp. Zoning Hearing Bd.*, 677 A.2d 1274, 1276 (Pa. Cmwlth. 1996) (citations omitted).

[4] We have reordered Appellants' arguments for ease of discussion.

Comprehensive Plan. (Appellants' Brief (Br.) at 23-24.) The ZHB and Agile[5] respond that the Ordinance cannot be challenged on the basis that it is inconsistent or fails to comply with the Comprehensive Plan, which does not expire. (ZHB's Br. at 15; Agile's Br. at 25.) Further, the ZHB and Agile assert that the rezoning of the Property is consistent with the goals of the Comprehensive Plan.

A review of the ZHB's Decision reveals that the ZHB did not ignore the Comprehensive Plan, as it specifically recognized that the Comprehensive Plan has not been updated since it was drafted and adopted in 1998 but noted that such plans do not expire. (FOF ¶ 15; COL ¶ 34.) Further, it was not error for the ZHB to reject the Challenge based on the Ordinance's alleged nonconformity with the Comprehensive Plan. Section 303(c) of the Pennsylvania Municipalities Planning Code[6] (MPC), 53 P.S. § 10303(c), provides: "Notwithstanding any other provision of this act, **no action** by the governing body of a municipality **shall be invalid nor** shall the same be **subject to challenge** or appeal **on the basis that such action is inconsistent with, or fails to comply with, the provision of a comprehensive plan**." (Emphasis added.)

In *CACO Three, Inc. v. Board of Supervisors of Huntington Township*, 845 A.2d 991, 995 (Pa. Cmwlth. 2004), we stated,

> [a]lthough a comprehensive plan is a useful tool for properly guiding growth and development of the community, it is only intermediate and inconclusive steps in the land use planning [sic]. *Swinehart v. Upper Pottsgrove T*[*wp.*], . . . 351 A.2d 702 ([Pa. Cmwlth.] 1976); *Saenger v. Plan*[.] *Comm*[*'n*] *of Berks C*[*nty.*], 308 A.2d 175 (Pa. 1973).

---

[5] The Borough filed a Statement in Lieu of Brief, adopting and incorporating the ZHB's Findings of Fact and March 20, 2021 Decision, and requesting that this Court affirm the Opinion and Order of common pleas.

[6] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10303(c).

7

> Unlike a specific and regulatory zoning ordinance, a comprehensive plan is, by its nature, an abstract recommendation as to desirable approaches to land utilization and development of the community. *Michaels Dev*[.] *Co. v. Benzinger T*[*wp.*] *B*[*d.*] *of Supervisors*, . . . 413 A.2d 743 ([Pa.] 1980).

Thus, we held that inconsistencies with a comprehensive plan, by themselves, were insufficient to, in that case, deny a land development plan. *Id.* In *Briar Meadows Development, Inc. v. South Centre Township Board of Supervisors*, 2 A.3d 1303, 1307 (Pa. Cmwlth. 2010), this Court held, citing Section 303(c) and *CACO Three*, that a substantive challenge to a zoning ordinance could not be based on the ordinance's alleged inconsistency with a comprehensive plan.

Under Section 303(c) of the MPC, *Briar Meadows Development, Inc.*, and *CACO Three*, Appellants' contention that the ZHB's determination must be reversed due to the Ordinance's alleged inconsistency or noncompliance with the Comprehensive Plan is not a proper basis upon which to challenge the Ordinance's validity. 53 P.S. § 10303(c); *Briar Meadows Dev., Inc.*, 2 A.3d at 1307; *CACO Three*, 845 A.2d at 995. Moreover, a review of the Comprehensive Plan reveals that one of its goals is to promote the development of adequate off-street parking for existing and new development. (Reproduced Record (R.R.) at 494a.) Here, the ZHB credited Mr. Slater's testimony that additional off-street parking was needed and would be provided on the Property as rezoned. (*Id.* at 965a.) Further, as Mr. Schwartz credibly testified, the Ordinance advances the public health, safety, and welfare of the community because it frees the streets from excessive cars and prevents the nuisance of someone parking in or blocking access to someone else's driveway. (*Id.* at 199a-200a.) Mr. Schwartz also explained the Ordinance is consistent with the Comprehensive Plan's goal of requiring businesses to provide additional off-street parking to prevent their patrons from "inundating the streets."

8

(*Id.*) Based on the foregoing, we conclude that the ZHB neither ignored the Comprehensive Plan nor erred in not granting the Challenge on this basis.

*B. Did the ZHB err in finding that the Ordinance was not invalid?*

Appellants also argue that the Ordinance is invalid as impermissible spot zoning because it creates a peninsula of commercial property surrounded by residential property that has no relevant differences from its neighboring, residential properties and because the Ordinance is arbitrary, capricious, and exceeds the Borough's constitutionally-derived police power.[7] As part of these arguments, Appellants assert that two of the ZHB's findings used in concluding that no spot zoning occurred – that there were residential dwellings on only two sides of the Property and that additional parking is needed – are not supported by substantial evidence. On the legal issues, Appellants maintain that the Ordinance created a peninsula of "commercial" property, which constitutes impermissible spot zoning under *Knight v. Lynn Township Zoning Hearing Board*, 568 A.2d 1372 (Pa. Cmwlth. 1990) and *C.L. Associates v. Board of Supervisors of Montgomery Township*, 415 A.2d 134 (Pa. Cmwlth. 1980),[8] wherein the rezoning of a single property created a peninsula that was found to be spot zoning. (Appellants' Br. at 18.) According to Appellants, the Ordinance also is invalid because it exceeds the Borough's authority, in that the rezoning is for the sole benefit of Agile, rather than the community, as reflected in the 260 signatures of residents opposing the rezoning, a fact that the ZHB should have considered, but did not. The ZHB

---

[7] Although Appellants' brief contains separate sections for these issues, their arguments on these issues overlap considerably. Therefore, we will address them together to avoid repetition.

[8] Appellants refer to this case as *Montgomery Township Appeal*.

9

ignored, Appellants argue, "that the only reason the [r]ezoned [P]roperty borders the MUN [d]istrict at all is because of the rezoning of three residential parcels owned by Agile in conjunction with the 2015 Expansion." (*Id.* at 20.) Because the Property will be used for parking, rather than for residential purposes, Appellants argue that the Property's use is now different from the surrounding properties without justification. (*Id.* at 21.)

The ZHB and Agile respond that the Ordinance does not create a peninsula, but rather is a natural extension of an existing MUN district, and that there is substantial evidence for the ZHB's findings. (ZHB's Br. at 10; Agile's Br. at 10, 28-29.) Agile argues that the rezoning of the Property was not spot zoning because the Property is not being treated unjustifiably different from similar surrounding land, and that, in reviewing the "surrounding" land, more than just the immediately adjacent properties should be considered. (Agile's Br. at 14, 18.) The ZHB and Agile further argue that the ZHB was not required to engage in an analysis of whether the Ordinance benefited the community's health, safety, and welfare once the ZHB determined that the Property was not being treated unjustifiably differently from similar surrounding land because Appellants did not establish that the Property was spot zoned. (ZHB's Br. at 14; Agile's Br. at 14.) "Nonetheless, the ZHB gave [Appellants] ample opportunity to verbalize their disagreement with the Borough's rezoning decision." (ZHB's Br. at 14.) The ZHB highlights that Appellants "testified at length about their opposition when the three lots behind the funeral home were rezoned MUN, while admitting that no validity challenge was raised in 2015[,]" but notes that such rezoning was not before the ZHB or relevant to the rezoning of the Property. (*Id.* at 15.) Agile asserts that the rezoning "was consistent with, upholds, and facilitates the community development objectives

10

outlined in the Comprehensive Plan," (Agile's Br. at 30), and, as such, was not arbitrary or unreasonable.

### 1. Substantial Evidence

In reviewing Appellants' substantial evidence challenges, we are mindful that "this Court may not substitute its interpretation of the evidence for that of the zoning hearing board." *Taliaferro v. Darby Twp. Zoning Hearing Bd.*, 873 A.2d 807, 811 (Pa. Cmwlth. 2005) (citation omitted). "The board is the sole judge of the credibility of witnesses and the weight afforded their testimony." *Id.* (citation omitted). "Assuming the record contains substantial evidence, we are bound by the board's findings that result from resolutions of credibility and conflicting testimony rather than a capricious disregard of the evidence." *Id.* (citation omitted). "Substantial evidence is such relevant evidence that a reasonable mind would accept as adequate to support a finding of fact." *Czachowski v. Zoning Bd. of Adjustment*, 271 A.3d 973, 979 n.9 (Pa. Cmwlth. 2022) (citation omitted). When determining whether there is substantial evidence to support a finding, "we must view the evidence in the light most favorable to the party that prevailed before the fact[ ]finder." *Renaissance Real Est. Holdings, L.P. v. City of Phila. Zoning Bd. of Adjustment*, 199 A.3d 977, 983 (Pa. Cmwlth. 2018) (citation omitted). "It is irrelevant whether the record contains evidence to support findings other than those made by the fact finder." *Id.* (citation omitted).

Our review of the record reveals that the challenged ZHB's findings are supported by substantial evidence. As to the ZHB's findings that the Property borders 50% on the R-1 district and 50% on the MUN district, and has residential dwellings to the southeast and southwest, with the land to the northwest and northeast consisting of MUN and CRD along Brownsville Road, (FOF ¶¶ 8-9),

these findings are supported by the maps and Mr. Schwartz's testimony. The maps show that one side of the Property is zoned MUN and a second side of the Property abuts the right-of-way for Wainwright Road. (R.R. at 309a, 1005a-08a.) The other sides of the Property are zoned R-1 and have residential dwellings thereon. (*Id.* at 309a.) The map of the larger area demonstrates that there are MUN and CRD districts to the northwest and northeast of the Property. (*Id.* at 1005a-08a.) Mr. Schwartz credibly explained that the perimeter of the Property is 370 feet in length, that approximately 50% is adjacent to the R-1 properties, a "small leg on Wainwright," approximately 40 to 45 feet, is on a right-of-way, and that to the northwest "adjoins the existing mixed use neighborhood district." (*Id.* at 163a-64a.) Mr. Schwartz also testified that 50% of the rezoned Property adjoins an existing MUN district or Wainwright Avenue, and approximately 49.25% adjoins the R-1 district. (*Id.* at 165a.) Viewing this evidence in the light most favorable to Agile, "a reasonable mind would accept [it] as adequate to support [the challenged] finding of fact," *Czachowski*, 271 A.2d at 979 n.9, and, therefore, the ZHB's findings are supported by substantial evidence.

The ZHB's finding that additional parking is needed likewise is supported by substantial evidence. Although Appellants provided pictures purporting to show sufficient parking and testified that the funeral home has 107 parking spaces, Mr. Slater does not need more, and the parking "is more than enough" because Mr. Slater allowed third parties to park in the lot daily, (R.R. at 65a), Agile presented contrary evidence. Mr. Slater testified that there are occasions when parking at the funeral home is inadequate. (*Id.* at 231a.) On these occasions, Mr. Slater explained, patrons park on neighboring streets or in parking lots of neighboring businesses. (*Id.* at 231a-32a.) Mr. Slater testified that there have been instances

12

where patrons have complained about having to park far away from the funeral home, and that there is occasionally a hazard on Brownsville Road when "people are trying to get into the parking lot." (*Id.* at 232a-33a.) Mr. Slater acknowledged that parking is not an issue when only one family is at the funeral home, but where there are "two huge families" or "many times, three or four families, sometimes five, [] parking is definitely an issue." (*Id.* at 234a.) The ZHB, acting in its role as fact finder, weighed the evidence and found Mr. Slater's testimony more convincing, and we are bound by that determination. *Taliaferro*, 873 A.2d at 811. Because "a reasonable mind would accept [Mr. Slater's credible testimony] as adequate to support [the] finding of fact" at issue, *Czachowski*, 271 A.2d at 979 n.9, the ZHB's findings are supported by substantial evidence.

## 2. Spot Zoning

We now turn to Appellants' legal challenge to the Ordinance's validity because it created a peninsula of differently treated property that directly benefits Agile. Zoning ordinances are presumed to be valid, and a challenger has a heavy burden of establishing the ordinance's invalidity. *Woll v. Monaghan Twp.*, 948 A.2d 933, 938 (Pa. Cmwlth. 2008). Spot zoning has historically been defined as "zoning provisions adopted to control the use of a specific area of land without regard to the relationship of those land use controls to the overall plan and the general welfare of the community." *Twp. of Plymouth v. Cnty. of Montgomery*, 531 A.2d 49, 57 (Pa. Cmwlth. 1987). As explained by this Court,

> [s]pot zoning is a singling out of one lot or a small area for different treatment from that accorded to similar surrounding land indistinguishable from it in character, for the economic benefit or detriment of the owner of that lot. *In re Realen Valley Forge Greenes Assoc[s.]*, . . . 838 A.2d 718, 729 ([Pa]. 2003). The most determinative factor in an analysis of spot zoning is whether the

13

parcel in question is being treated unjustifiably different from surrounding land, thus creating an "island" having no relevant differences from its neighbors. *BPG Real Estate Investors-Straw Party II, L.P. v. B*[*d.*] *of Supervisors*, 990 A.2d 140, 150 (Pa. Cmwlth. 2010).

To establish improper spot zoning, the challenger must prove that the provisions at issue are arbitrary and unreasonable and have no relation to the public health, safety, morals and general welfare. *Id.* If the validity of a zoning ordinance is debatable, it must be permitted to stand. *Id.* Spot zoning cases should be decided on the facts, guided by case law, [and] there is no precise formula for determining whether a rezoning of property constitutes spot zoning. *Id.*

*Takacs v. Indian Lake Borough Zoning Hearing Bd.*, 11 A.3d 587, 594 (Pa. Cmwlth. 2010).

When considering whether the subject property has been accorded unjustifiable differential treatment, the courts have considered the size of the property, along with the topography, location, and characteristics of the tract at issue. *Knight*, 568 A.2d at 1375. Our Supreme Court cautioned in *Schubach v. Silver*, however, that

a reviewing court **cannot take too constrained a view of the surrounding neighborhood**. To discuss a zoning measure by merely looking at the nature of the particular city block on which the rezoned [] land is located is simply incorrect. Although the court must focus its attention on the immediately surrounding land, . . . we are mindful that in this immediate area there is an industrial tract, multi-family apartment structures and shopping areas. **If on[e] stood on the [property] and made a 360[-]degree turn, within a few blocks of the land, [one] would find many different land uses**.

336 A.2d 328, 337 n.16 (Pa. 1975) (emphasis added). Applying these standards, we discern no error in the ZHB's denial of Appellants' Challenge.

14

Appellants argue that the Ordinance is invalid spot zoning because Agile requested the rezoning and will benefit from that rezoning. However, spot zoning does not occur simply because the rezoning occurs at the request of the landowner, *Schubach*, 336 A.2d at 337; *Appeal of McWilliams*, 198 A.2d 538, 540 (Pa. 1964), or because the landowner will benefit from the rezoning, *Lyons v. Zoning Hearing Board of Borough of Sewickley* (Pa. Cmwlth., No. 178 C.D. 2014, filed Nov. 10, 2014), slip op. at 17.[9] Further, to the extent that Appellants' arguments could be read as challenging the Borough's rationale for enacting the Ordinance, a municipality's state of mind in enacting an ordinance is irrelevant to the ordinance's validity. *Plaxton v. Lycoming Cnty. Zoning Hearing Bd.*, 986 A.2d 199, 210 (Pa. Cmwlth. 2009). Therefore, these are not reasons to conclude that the ZHB erred.

In asserting that the Ordinance created a peninsula of property that was being treated differently, Appellants focus on the Property's connection with their own residential properties and argue, essentially, that the Property's connection with the MUN district should be disregarded because of how that MUN district came into existence and how Agile has used or will use its properties in the MUN district. The ZHB held that the Property was located in an area of mixed residential and non-residential uses and was not being treated differently from other properties because its rezoning was an extension of the existing MUN district, a district that, like the R-1 district, allows residential uses. (COL ¶¶ 32-33.) Precedent has held that the most determinative factor is whether the rezoned

---

[9] While not binding, unreported opinions of this Court may be cited for their persuasive authority pursuant to Pennsylvania Rule of Appellate Procedure 126(b), Pa.R.A.P. 126(b), and Section 414(a) of our Internal Operating Procedures, 210 Pa. Code. § 69.414(a).

property is being treated unjustifiably different from surrounding properties, resulting in an "island" or "peninsula" with **no relevant differences** from its **neighbors**. *Takacs*, 11 A.3d at 594 (citing *BPG Real Estate Investors-Straw Party II*, 990 A.2d at 150). In reviewing such determinations, we must be mindful that we do not take a "too constrained a view of the surrounding neighborhood." *Schubach*, 336 A.2d at 337 n.16.

In focusing only on their own residential uses and the proposed parking use of the rezoned Property, Appellants discount that the focus is on the zoning classifications of the properties around the rezoned property and whether the rezoning creates a different classification without justification. The Property, as rezoned, allows for residential dwellings, just as the adjacent R-1 district does. That the Property may also be used for a non-residential use, which is also permitted in the MUN district, does not result in a peninsula of commercially zoned property in a sea of residentially zoned property. The fact remains that the rezoned Property permits residential **and** commercial uses. Appellants' arguments and focus on their residential properties further ignore the transitional purpose of the MUN district, which, per Section 210-26 of the BRENTWOOD ZONING ORDINANCE, "is to provide areas for a **mix of residential and neighborhood commercial facilities intended to serve the immediate area with goods and services**." (R.R. at 362-63a (emphasis added).) Mr. Schwartz credibly testified, consistent with that section, that the MUN district is to serve as a buffer between residential and "the more intense commercial areas, like on the other side of Brownsville where the Giant Eagle and the McDonald's" are located. (*Id.* at 171a.) Reviewing the broader area surrounding the Property, which includes both the nearby residences, but also the MUN district and the intense commercial areas

16

of the CRD, it cannot be said that the Property is being treated **unjustifiably** differently. Accordingly, these are not reasons to find that the ZHB erred.

Appellants' argument that the rezoned property will be "clearly a different use from the properties located to the North, South, and East of the rezoned property," (Appellants' Br. at 21), is similarly unpersuasive. First, Appellants' view of the surrounding area is too constrained, as, in accordance with the Supreme Court directive in *Schubach*, we must view the surrounding area more broadly than just the block on which the rezoned property is located. In that broader surrounding area, there is a MUN district and a right-of-way immediately adjacent to the Property and, nearby, there is a CRD, which Mr. Schwartz credibly described as "more intense commercial." (R.R. at 171a.)

Second, in *Appeal of McWilliams*, our Supreme Court recognized the importance of allowing the natural extension of an already-existing, adjacent zoning district in analyzing the validity of an ordinance, even if it allows for different uses. 198 A.2d at 540. In that case, the Supreme Court concluded that the ordinance at issue did not constitute the illegal spot zoning of a property and had a reasonable relationship to the health, safety, and general welfare, explaining:

> The tract of land here in question, slightly less than an acre in area, was rezoned at the request of appellees' grantor. This fact does not in and of itself invalidate the rezoning. . . . Nor does the limited size of the plot and the fact that all other properties fronting on Marshall Road . . . are zoned B-Business, necessarily force the conclusion that the enactment is invalid. Reference to the township zoning map discloses that the area zoned is a natural extension of an already existing R-3 Residential district, adjoining to the north and west.
>
> . . . .

17

> Nor can we brand the ordinance as illegal spot zoning. The area rezoned is not an "island of more or less restricted use within a district zoned for a different use or uses[.]" As previously stated herein, the area rezoned is adjoined on the north and west by a large R-3 Residential district and no residential island has been created by the ordinance.

*Id.* (footnote omitted).

Here, the rezoned Property is 6,225 square feet – much less than the almost acre[10] being rezoned in *McWilliams*, (FOF ¶ 5), and there are adjoining properties that are zoned R-1. However, the limited size of the lot and the fact that the other properties are zoned R-1 does not "necessarily force the conclusion that the enactment is invalid." *McWilliams*, 198 A.2d at 540. Similar to the rezoning in *McWilliams*, the Property was rezoned to an already existing district, the MUN district,[11] adjoining the Property, which, like the R-1 district, allows residential uses. As such, the rezoned Property is a natural extension of the already existing MUN district and it is not a peninsula or "island of more or less restricted use within a district zoned for a different use or uses." *Id*. The rezoned Property shares the same and similar uses to its surrounding properties, and, therefore, Appellants' arguments on this point do not establish error by the ZHB.

*Knight* and *C.L. Associates*, upon which Appellants rely, are distinguishable. In *Knight*, we held that an ordinance constituted illegal spot zoning, citing as "a conclusive factor" a contract in which the landowner agreed to record a restrictive covenant limiting development of the land. 568 A.2d at 1376. We explained that

---

[10] An acre is 43,560 square feet. *See* https://www.unitconverters.net/area/square-feet-to-acres.htm (last visited Apr. 17, 2023).

[11] Although Appellants assert arguments based on the 2015 rezoning that resulted in the MUN district, no challenges to that rezoning were filed at that time. We agree with the ZHB and Agile that the time to challenge the validity of that rezoning has passed.

18

"the contract, which the governing body tailored to ensure particular use restrictions of the tract, [was] evidence of the [s]upervisors' intent to adopt a unique classification for a particular parcel[]" and that such classification did not "further the purpose of the zoning ordinance or the comprehensive plan." *Id.* Conversely, here, there is neither a contract nor agreement between the Borough, Agile, and/or Mr. Slater that the rezoned Property be used only for parking. Appellants acknowledge this but assert that the Ordinance "was tied together with the land development plan for the parking lot expansion so that it became the functional equivalent of Mr. Slater promising to only use the Property for parking and not any other authorized use in the MUN [d]istrict." (Appellants' Br. at 17-18.) However, there is no evidence that the rezoned Property can be used **only** for parking purposes, which distinguishes this matter from *Knight*. Also, unlike the challenged ordinance in *Knight*, the Ordinance, and Agile's intended use of the Property, furthers the Comprehensive Plan's goal of promoting the development of adequate off-street parking for existing and new development. (R.R. at 472a, 494a.) Thus, *Knight* does not require a different result.

*C.L. Associates* is similarly distinguishable. In that case, a landowner sought rezoning of its property consisting of two 100-foot wide lots, so that the entirety of the lots was zoned C-Commercial, rather than three-fourths of the lots as it was zoned. The remaining one quarter of the lots was zoned R-2 Residential, in which no commercial uses were permitted. Adjoining and/or within a few hundred feet of the two lots were a fast food restaurant (adjoining to the east), a motel (adjoining on the south), and a large shopping mall (300 feet to the south and southwest). The owner of the lot immediately to the west of the two lots asked to have his 100-foot wide lot rezoned but subsequently sought to retain its R-2

19

Residential zoning. After the hearing, the board of supervisors did not grant or deny the requested relief but rezoned the two lots R-2 Residential "by redrawing the line marking the boundary of the C-Commercial and R-2 Residential zoning districts," and enacted an ordinance to amend the zoning map to reflect the change. *C.L. Assocs.*, 415 A.2d at 136. On appeal, we upheld the trial court's findings of impermissible spot zoning, that the two lots should be zoned C-Commercial, because the amendment created "a peninsula of residentially zoned land in a sea of commercial zoning (and uses)," and singled out these properties for treatment different than other similar surrounding land to the economic detriment of the owner. *Id.* We noted that the amendment, which related only to the appellee's property, interrupted the otherwise "perfectly straight lines marking the C-Commercial zoning" along the Route 309 corridor, even though "those lines pass[ed] through many other properties, large and small," and questioned whether the zoning was designed to prevent a permitted use of the land after an application for that use had been made to the township. *Id.*

The instant case is distinguishable from *C.L. Associates*. The rezoning in *C.L. Associates* precluded the lots from being used for commercial uses, as they had been zoned before and which were consistent with the "sea" of adjoining and nearby commercial properties. *Id.* at 136. The Ordinance still permits residential use of the Property, which is consistent with its previous zoning and with its neighboring R-1 district, but also permits additional uses that are consistent with the adjoining MUN district and nearby CRD district. Accordingly, *C.L. Associates*, likewise, does not require a different result.

20

3. <u>Unreasonable, Arbitrary, and Unrelated to the Borough's Police Power</u>

Finally, Appellants assert that the Ordinance is invalid because it is unreasonable, arbitrary, and not substantially related to the Borough's police power. Appellants argue "substantial evidence exists that the . . . Ordinance is an unconstitutional exercise of the Borough's police power to zone for the benefit of one landowner at the expense of many." (Appellants' Br. a 22.) Appellants rely on the 260 Borough residents who signed a petition in opposition to the enactment of the Ordinance, and their claims that Whitehall House is not permitted in the MUN district and no additional parking is needed. (*Id.* at 22-23; R.R. at 671a-88a.)

We have already addressed Appellants' claims regarding the lack of need for additional parking, holding that the ZHB's contrary findings are supported by substantial evidence, as well as those relating to how the rezoning was based on Agile's request and benefitted Agile, which does not reflect that impermissible spot zoning has occurred under our precedent. *See, e.g., Schubach*, 336 A.2d at 330. This leaves Appellants' argument based on the 260 signatures of residents who opposed the Ordinance and assertions related to the impermissible use of Whitehall House in the MUN district.

A zoning ordinance is presumed valid and constitutional and the challenging party "must clearly establish the provisions are **arbitrary** and **unreasonable** and have **no relation** to the public health, safety, morals, and general welfare and if the validity is debatable the legislative judgment is allowed to control. *Id.* at 335 (emphasis added). While Appellants presented evidence that 260 residents opposed the Ordinance, it cannot be said that the Ordinance has "**no** relation to the public health, safety, morals, and general welfare," *id.* (emphasis added), where it

21

is consistent with the purpose of the MUN district, which reflects the Borough's legislative judgment to create a buffer area between commercial and residential uses. The Ordinance is also consistent with the Comprehensive Plan's goals of ensuring sufficient off-street parking for existing and new development, which Mr. Schwartz credibly testified protects the public health, safety, and welfare by freeing the streets of excessive cars and preventing the nuisance of people parking in or blocking access to the driveways of residences nearby. (R.R. at 199a-200a.) It is neither arbitrary nor unreasonable to enact an ordinance that is consistent with a comprehensive plan (even if such consistency is not required for the legislation to be valid per *CACO Three*, 845 A.2d at 995). Thus, these are not reasons to find the ZHB erred or abused its discretion.

Appellants' arguments that the ZHB erred because Whitehall House is not a permitted use in the MUN district but is being used as an exhibition center or nightclub are unpersuasive. To the extent that Appellants' arguments appear to argue that the 2015 rezoning was in error, (Appellants' Br. at 24), no validity challenge was ever filed to the 2015 rezoning, (FOF ¶ 20), and that rezoning, having gone unchallenged, is not relevant to the question currently before the ZHB – the rezoning of the Property. Further, there is a question regarding how the use of Whitehall House is relevant to whether the Ordinance constitutes impermissible spot zoning of the Property. As common pleas' noted, the Borough's Solicitor acknowledged "that a substantive validity challenge is the wrong way to address [the] concerns" that Appellants have about being negatively impacted by the development of Whitehall House. (Common pleas Op. at 4; R.R. at 955a-56a.) Finally, although Appellants characterize Whitehall House as an "exhibition center[] and/or nightclub[]," (Appellants' Br. at 8), the ZHB found that Whitehall

House was "a hospitality venue for the funeral home that also [is] available for rent by the public for social events," (FOF ¶ 13). Appellants do not allege, nor provide support for their proposition from the Borough Zoning Code, the MPC, or any relevant law, that the use identified by the ZHB is not permitted in the MUN district. Thus, Appellants have not established that the Ordinance is unreasonable, arbitrary, or has no relationship with the public health, safety, morals and general welfare resulting in the Borough exceeding its police powers in enacting the Ordinance.

## III. CONCLUSION

Based on the foregoing, the ZHB's findings of fact are supported by substantial evidence and those findings, as well as precedent, support the conclusions that Appellants did not establish that the Ordinance constituted impermissible spot zoning by creating a peninsula of property being treated unjustifiably differently or that the Ordinance was unreasonable, arbitrary, and bore no relationship to the public health, safety, morals, and general welfare such that the Borough exceeded its police power. Accordingly, we affirm.

_____
**RENÉE COHN JUBELIRER,** President Judge

23

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Raisa and Yevgeniy Burd, Raju     :
and Kalpana Gurung, and        :
Henry Pietkiewicz,            :
                Appellants     :
                        :
        v.             :   No.  1049 C.D. 2021
                        :
Borough of Brentwood Zoning  :
Hearing Board, Borough of    :
Brentwood and Agile         :
Development, LLC           :

## <u>O R D E R</u>

**NOW**, April 18, 2023, the August 26, 2021 Order of the Court of Common Pleas of Allegheny County is hereby **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** President Judge